CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 1 2019

JULIA C. DUDLEY, CLERK
BY: /s/
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| KATELYN L., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:17-CV-00572 |
| | ) |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Acting Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 1, 2019, recommending that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Katelyn L. ("Katelyn") has filed objections to the report and this matter is now ripe for the court's consideration.

## I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478

F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. Plaintiff's Objections[1]

Katelyn raised two arguments before the magistrate judge on summary judgment—that the ALJ's findings were not supported by substantial evidence and that the ALJ's assessment of Katelyn's allegations was not supported by substantial evidence. In her

---

[1] Detailed facts about Katelyn's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 22) and in the administrative transcript (ECF No. 8). As such, they will not be repeated here.

4

objections to the report and recommendation, Katelyn takes issues with certain of the magistrate judge's findings as to each of these two arguments.

## A. Subjective Allegations of Pain and Fatigue

The ALJ concluded that Katelyn's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but found that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. The magistrate judge found the conclusion to be supported by substantial evidence.

Katelyn objects that the magistrate judge erred in finding that substantial evidence supports the ALJ's assessment of her subjective allegations. She cites Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017), where the Fourth Circuit remanded a case for several reasons, including because the ALJ based an adverse credibility determination partly on a claimant's daily activities but did not acknowledge the limited extent of the activities or explain how the activities showed that he could sustain full-time employment. Id. at 269-270. The court also found that the ALJ had "flout[ed]" the treating physician rule and also erroneously concluded that the claimant's records contradicted his hearing testimony and then penalized him for being dishonest at the hearing. Id. at 270. The court cited additional "inaccuracy[ies] and unreasonableness" in the ALJ's credibility finding, including substituting his own lay opinions for the judgments of medical professionals who had treated and examined the claimant over many years. Id. at 270-271.

Here, the magistrate judge distinguished Katelyn's case from Brown, finding that the ALJ did not rely on his own observations or judgments, but thoroughly discussed Katelyn's

5

self-reports and testimony, the objective medical evidence, and the medical opinions. The magistrate judge found that the ALJ recognized Katelyn's limited activities, but cited specific evidence as to why the activities may not have been as limiting as she alleged. In particular, the ALJ noted that Katelyn testified that she is able to care for her personal needs and is the primary caretaker of her infant daughter; that although she testified that she could only pick up ten pounds, she also testified that she could pick up her twenty-two pound daughter; and that she worked part-time as a companion, assisting elderly clients with transportation, dressing, and preparing meals. The court finds no error in the magistrate judge's conclusion that this case is distinguishable from Brown.

Additionally, in noting that the ALJ is entitled to analyze Katelyn's statements for credibility, the magistrate judge pointed out inconsistencies in her testimony, such as initially stating that she needed eight to ten hours of sleep per night, later stating that she needed twelve hours of sleep per night and a one-to-two hour nap during the day, and testifying at the hearing that she needed to lie down six times per day for forty-five minutes at a time while her one-year-old daughter napped. The magistrate judge also pointed out that the ALJ found that Katelyn stated in her pain and fatigue questionnaires that she could perform light housework such as sweeping, laundry, and preparing light meals, but at the hearing she stated that she could do no household chores at all. ECF No. 22 at 13-14.

Katelyn objects that the magistrate judge mischaracterized her testimony and that her reports of needing varying amounts of sleep can be explained by changing sleep patterns. She also claims that she never stated that she was unable to do any household chores. However, although the magistrate judge correctly stated that the ALJ is entitled to analyze Katelyn's

various statements for credibility and did note the statements in his decision, the ALJ did not cite to those particular statements to support his decision that she was not disabled. Rather, he described in great detail the allegations she made regarding pain and fatigue but found they were inconsistent with the largely unremarkable physical findings on examination and her reported activities, including child care and part-time work as a companion. He found that while she had impairments that reasonably were expected to produce pain or discomfort, objective medical evidence did not support the severity of symptoms she alleged. R. 27.

Having reviewed de novo Katelyn's allegations that the ALJ failed to properly credit her subjective complaints of disabling pain and fatigue, the court finds no error in the magistrate judge's conclusions. Accordingly, Katelyn's objection on this issue is overruled.

## B. Weight Given to Treating Physician's Opinion

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 Fed. Appx. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown, 873 F.3d at 268). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (2017) (alterations and internal quotations omitted). If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to

7

determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 Fed. Appx. at 398.

Katelyn's treating physician completed a "Medical Source Statement of Ability to Do Work-Related Activities." He limited her to occasionally lifting ten pounds and frequently lifting or carrying less than ten pounds; found that she could stand and walk for four hours in a workday and sit for six hours in a workday; said she would need to periodically alternate sitting and standing to relieve pain due to Fibromyalgia; found she would need to rest to relieve pain and fatigue for a total of one hour per workday which could be accommodated with a regular breaks and a lunch period, but while resting she would need to lie down or recline in a supine position; she would have a limited ability to push and pull; she was limited to occasional postural activities because of diffuse myalgias; she was unlimited in her manipulative abilities, visual, and communicative abilities; she had no environmental limitations except for not working around hazards; and she probably would be absent from work three times per month. R. 621-624.

The ALJ gave very little weight to the treating physician's opinion, finding it was inconsistent with the doctor's own treatment notes as well as the notes from the rheumatologist who stated that Katelyn did not meet the criteria for fibromyalgia. In addition, the ALJ found that the medical records did not support consistent multi-joint inflammation indicated by joint swelling, stiffness, redness, and/or warmth. Katelyn had not exhibited a significant loss of range of motion and there was no evidence of reduced grip strength in her

hands, loss of color in the affected regions, muscle spasm, muscle atrophy, difficulty moving, or muscle tremors. Office visits were often unremarkable with no other physical or neurological deficits observed. In addition, the ALJ noted that the limitations cited by the treating doctor appeared to be based on Katelyn's subjective complaints. R. 27.

The magistrate judge found that the ALJ properly considered the relevant factors and the record in determining the weight to give the treating physician's opinion. Katelyn objects, arguing that although the rheumatologist did not diagnose Katelyn with fibromyalgia, she did find that she had arthralgia of the left wrist and myofascial pain in both legs and that the ALJ had found that her arthralgia and myofascial pain were severe impairments. She argues that the evidence cited by the ALJ and the magistrate judge is not evidence typically associated with arthralgia/myofascial pain and therefore does not provide a basis for the conclusion that the treating physician's opinions are not supported by the record. In addition, she argues that the daily activities cited by the ALJ as being inconsistent with her allegations are limited and not performed on a sustained basis.

While it is true that the rheumatologist diagnosed Katelyn with arthralgia and myofascial pain based on reports of pain in her legs and feet, Katelyn had no swelling, stiffness, or weakness and her musculoskeletal examination was unremarkable. R. 547. The rheumatologist referred her back to her treating physician and suggested that he consider prescribing a muscle relaxer to help with myofascial pain and encourage exercise and physical therapy. R. 538. Other examinations of Katelyn were equally unremarkable. While she reported pain in her thighs and lower legs, there were no reports of redness, heat, or swelling; she had

9

a full range of motion; and her symptoms improved with Neurontin. R. 514, 521, 523, 559, 591, 594, 615.

The court has reviewed the record de novo and finds that the ALJ properly determined to give little weight to the opinion of Katelyn's treating physician because the opinion regarding her limitations was not consistent with the other medical evidence in the record. Accordingly, Katelyn's objection to the magistrate judge's finding on this issue is overruled.

## C. Residual Functional Capacity (RFC)

Katelyn also objects to the magistrate judge's conclusion that substantial evidence supports the ALJ's findings with regard to her RFC. She argues that the ALJ failed to make specific findings about whether her impairments would cause her to experience episodes of fatigue necessitating breaks or absences from work or changes in work posture, and how often they would occur. In particular, she argues that the ALJ failed to address the treating physician's opinion that she would need to lie down or rest supine in an easy chair for a total of one hour during the day; her daily activities are limited, performed intermittently or with assistance, at her own pace, and are not inconsistent with her allegations of disability; and the ALJ failed to include a need to lie down and rest during the day in his hypothetical question to the vocational expert.

Review of the record shows that the ALJ acknowledged the treating physician's opinion that Katelyn would need to rest lying down for one hour a day, but gave it little weight for the reasons discussed above. Regarding Katelyn's argument that her daily activities are not inconsistent with her allegations of disability, the fact that the ALJ found otherwise does not mean his decision is not supported by substantial evidence. See Ladda v. Berryhill, 749 Fed.

Appx. 166, 168 (2018) (noting that when reviewing for substantial evidence, a court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

Finally, with regard to the hypothetical question, Katelyn asserts that the ALJ erred when he did not include restrictions regarding breaks in his hypothetical question to the vocational expert. However, the ALJ found that Katelyn's allegation that she needed to lie down and rest during the day was not supported by medical evidence and hypothetical questions need only reflect impairments that are supported by the record. Russell v. Barnhart, 58 Fed. Appx. 25, 30 (4th Cir. 2003). Moreover, Katelyn's attorney had an opportunity to include in her hypothetical question to the vocational expert a question regarding the need to lie down during the day and did so. R. 58. "[A]ny possible defects in an ALJ's hypothetical are cured when the plaintiff's attorney is given an opportunity to pose questions to the VE." Smith v. Astrue, No. 2:11-CV-025-MR-DCK, 2012 WL 3191296 (W.D.N.C. 2012) (citing Shively v. Heckler, 739 F.2d 987, 990-91 (4th Cir. 1984)).

The magistrate judge correctly concluded that substantial evidence supports the ALJ's determination of Katelyn's RFC. Her arguments to the contrary are unpersuasive and overruled.

## CONCLUSION

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

Entered: 03-01-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge